## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Paul Brooks Leetch,                    Case No. 21-cv-1432 (KMM/DTS)

      Petitioner,

v.                                     **REPORT AND RECOMMENDATION**

Jeffrey Fikes, Warden,
FCI-Sandstone,

      Respondent.
_____

Petitioner Paul Brooks Leetch brings this habeas petition under 28 U.S.C. § 2241 seeking expungement of an incident report and restoration of 41 days of good conduct time that he lost as a disciplinary sanction for possessing narcotics at the Federal Correctional Institution in Sandstone, Minnesota. He exhausted the administrative appeal process, but contends the long delay in receiving the Disciplinary Hearing Officer's (DHO) report denied him a meaningful appeal because it prevented him from obtaining a witness statement from his former cellmate. Leetch asserts this violated his due process rights. For the reasons stated below, the Court recommends his petition be denied.

### FINDINGS OF FACT

Leetch is serving a 121-month term of imprisonment for possession with intent to distribute methamphetamine. Kensy Decl. ¶ 7 & Ex. B, Dkt. Nos. 7, 7-2. His projected release date is April 16, 2027 via a good conduct time release. *Id.*

### I.     BOP Disciplinary Process

The BOP's disciplinary process is as follows. First, a staff member prepares an incident report with factual support for an alleged violation of the disciplinary code and forwards the incident report for investigation. *Id.* ¶ 3. The investigating officer then

provides a copy of the incident report to the inmate, ordinarily within 24 hours of the incident report. *Id.* After completing the investigation, the investigating officer forwards the incident report to a Unit Disciplinary Committee (UDC) for an initial hearing. *Id.* ¶ 4. This hearing generally occurs within five working days after the incident report was issued. *Id.* The Warden must approve any delay if the incident report is not timely heard by the UDC. *Id.*

The UDC may: (1) find the inmate committed the prohibited act, and for certain disciplinary violations, sanction him; (2) find the inmate did not commit the prohibited act; or (3) refer the incident report to the DHO for further hearing. *Id.* If the UDC refers the incident report to the DHO, it advises the inmate of his rights at the DHO hearing, which include the right to make a statement, to present witnesses and documentary evidence, and to request a staff representative to assist him during the DHO hearing. *Id.* ¶¶ 4-5.

The DHO holds a hearing, and the inmate receives a written report of the final decision. *Id.* ¶ 5. The decision states the DHO's determination that the inmate did or did not commit the prohibited act or, alternatively, refers the incident report back for further investigation, review, and disposition. *Id.*

## II.    BOP Administrative Remedy Procedure for Inmate Grievances

The BOP has a four-tiered administrative procedure for inmate grievances which is codified at 28 C.F.R. § 542.10 - 542.19. Boldt Decl. ¶ 5, Dkt. No. 6. The first step is informal resolution with prison staff. A Request for Informal Resolution Forms (BP-8) is not assigned a Remedy ID number and is not tracked. *Id.* ¶ 6. If this step does not resolve the complaint, the inmate proceeds to the second step, which is to file a formal Request for Administrative Remedy (BP-9) at the institution where he is incarcerated. *Id.* If he is not satisfied with the Warden's response to his BP-9, the inmate may appeal to the

Regional Director by filing a Regional Office Administrative Remedy Appeal (BP-10) within 20 days of the date the Warden signed the response. *Id.* If dissatisfied with the Regional Director's response, the inmate may appeal to the Director, National Inmate Appeals, in the Office of the General Counsel in Washington, D.C. by filing a Central Office Administrative Remedy Appeal (BP-11). *Id.* The inmate may not raise an issue on appeal that he did not raise in a lower level filing. *Id.* This is the final administrative appeal. *Id.* ¶¶ 6-7.

### III.    January 31, 2020 Discovery of Narcotics (Incident Report No. 3359712)

On January 31, 2020 Correctional Officer G. White conducted a cell search and found a small baggie containing a green substance inside a roll of toilet paper sitting on a shelf above the toilet. Dkt. No. 7-4 at 3 (White memorandum). Leetch and E.M. were assigned to the cell. *Id.* Officer White notified Special Investigative Services (SIS) Lieutenant Michael Weber and gave him the toilet paper roll containing the baggie. *Id.* Lt. Weber tested the substance, which tested negative for marijuana and positive for amphetamines. *Id.* at 4 (Weber memorandum), 5 (photos).

Leetch was charged with possession of narcotics not prescribed by medical staff, a Code 113 prohibited act that the BOP considers a "Greatest Severity Level Prohibited Act" under Program Statement 5270.09 (Inmate Discipline Program).[1] *See* Kensy Decl. Ex. A at 44-45, Dkt. No. 7-1; 28 C.F.R. § 541.3, Table 1. The incident report was delivered to Leetch on January 31, 2020 and he was advised of his rights for the disciplinary process. Kensy Decl. Ex. D at 1-2, Dkt. No. 7-4. Leetch stated, "I didn't know anything

---

[1] A Code 113 violation is for "[p]ossession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff."

about what was found." *Id.* at 2. The incident report was referred to the UDC for a hearing. *Id.* at 2.

On February 6, 2020 the UDC conducted an initial hearing at which Leetch said "it's mine" and also stated that the toilet was picked up from the warehouse the day before and the rolls were put in the cell that morning. *Id.* at 1. The UDC referred the incident report to the DHO for further hearing and advised Leetch of his rights. *Id.* at 1; Kensy Decl. Ex. E (Inmate Rights at Discipline Hearing), Dkt. No. 7-5. Leetch declined to have a staff representative present at the hearing and declined to call any witnesses. Kensy Decl. Exs. F (Notice of Discipline Hearing Before the DHO) and G (DHO Report at 1), Dkt. Nos. 7-6, 7-7.

DHO Kensy held a hearing on February 13, 2020 and issued a report on August 7, 2020. DHO Report, Dkt. No. 7-7.[2] At the hearing Leetch stated, "It was neither of ours." *Id.* at 1-2. DHO Kensy considered the incident report, investigation, photographs, Officer White's memorandum, and Leetch's statement. *Id.* at 2. In light of the evidence, she did not find his statement credible because he "provided no explanation as to how the substance could have gotten into your cell," and she "could find no obvious reasons the reporting staff would make false allegations." *Id.* DHO Kensy found he had committed the Code 113 prohibited act of possessing narcotics and sanctioned him with: (1) 30 days disciplinary segregation, suspended pending 180 days clear conduct, (2) disallowance of

_____

[2] The DHO Report is found in two places in the record. The full 3-page report is found at Docket No. 7-7 (Kensy Decl. Ex. G), but page 3 does not have DHO Kensy's signature and does not include the date the report was delivered to Leetch. The copy of the report in Docket No. 6-2 at pages 8-9 (Boldt Decl. Ex. B) shows the Kensy signature and the delivery information for Leetch on page 3, but is missing page 2.

41 days good conduct time, and (3) loss of 90 days of visiting, commissary, and phone privileges. *Id.* at 2.

Leetch received a copy of the DHO Report on February 8, 2021, six months after it was issued. Boldt Decl. Ex. B, Dkt. No. 6-2 at 8-9. The report advised him of his right to appeal the decision within 20 days under the Administrative Remedy Procedure. *Id.* at 9.

Leetch appealed the decision through the highest BOP administrative level, and his appeal was denied. Boldt Decl. ¶¶ 13-14 & Exs. A & B (appeals and BOP responses), Dkt, Nos. 6, 6-1, 6-2. Leetch and Respondent agree that he exhausted the administrative appeal process. Petition at 2, Dkt. No. 1; Response at 6, Dkt. No. 5.

## CONCLUSIONS OF LAW

### I.     Legal Standard

A challenge to the revocation of good conduct time is property raised in a habeas petition. *Prieser v. Rodriguez*, 411 U.S. 475, 487 (1973). However, "federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985).

Deprivation of good conduct time, which may shorten a term of imprisonment, implicates a liberty interest that is protected by the Due Process Clause. *See Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). Although not entitled to "the full panoply of rights due a defendant" in a criminal prosecution, *id.* at 555, an inmate subject to prison disciplinary proceedings must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing

*Wolff*, 418 U.S. at 563-67). In addition, the disciplinary findings must be supported by "some evidence in the record." *Id.*

## II.    Analysis

Leetch does not claim a lack of due process before or during the DHO hearing, nor does he claim a lack of evidence to support the DHO's determination that he committed the prohibited act of possessing narcotics. It is also undisputed that he pursued the administrative appeal process to its conclusion. Rather, Leetch contends he was deprived of a "meaningful" appeal because the delay in providing him the DHO Report prevented him from obtaining a witness statement from his former cellmate, E.M. Respondent opposes his petition, arguing that Leetch received all the process he was due under *Wolff* and that the delay in providing the DHO Report did not hinder or prejudice his administrative appeal.

BOP Program Statement 5270.09 states that an inmate is to receive a copy of the DHO's written decision "ordinarily within 15 work days of the decision." Dkt. No. 7-1 at 34. In Leetch's case, six months elapsed between the DHO hearing and her August 7, 2020 DHO Report, and another six months passed before the report was delivered to Leetch on February 8, 2021.

In his petition Leetch does not describe what the potential statement from E.M. would say or how it would make a difference to his appeal. He also does not explain how the delay in receiving the DHO Report "effectively prevented" him from obtaining a statement from E.M. to support his appeal. For example, he provides no information about when E.M. stopped being his cellmate or why E.M. was unavailable to provide a witness statement at any point in the proceedings. Leetch waived his right to have witnesses at the February 13, 2020 DHO hearing, which took place just 13 days after the incident.

6

Assuming E.M. was still his cellmate (or was otherwise available) as of that date, Leetch offers no explanation as to why E.M. was not a witness, or did not provide a written statement, at the DHO hearing to support Leetch's defense. Leetch's own statement at the hearing was that the narcotics did not belong to either of them. *See* DHO Report at 2 ("It was neither of ours."), Dkt. No. 7-7. It is not evident what a statement from E.M. would have added to Leetch's defense. And if Leetch believed a statement from E.M. was not needed at the DHO hearing, it is not clear (1) why it was needed for his appeal, or (2) how the delay in receiving the DHO Report made any difference in his ability to pursue a "meaningful" appeal. As the BOP pointed out in rejecting his final appeal, whether the narcotics belonged to him or to someone else "is not the issue" because "the substance was found in an area under your dominion and control." Boldt Decl. Ex. B at 1, Dkt. No.6-2. The Court finds no support for Leetch's argument that the delay in receiving the DHO Report deprived him of due process.

Leetch cites *Hawkins v. Sproul,* No. 18-cv-2206, 2020 WL 1905170 (S.D. Ill. Apr. 17, 2020), but the facts and posture of that case are different. That case involved a homemade weapon found under Hawkins's cellmate's locker in the common area of their cell. Hawkins was charged with possessing the weapon. At the DHO hearing Hawkins denied the weapon was his. The DHO noted that the cellmate likewise denied ownership. *Id.* at *1.

The DHO found Hawkins guilty of possessing the weapon and prepared a report. He based his finding on the location of the weapon in a common area, the lack of corroborating evidence to establish ownership by either cellmate, and the fact that Hawkins had occupied the cell for 11 months. *Id.* Through a series of errors by prison officials, the DHO's report was not delivered to Hawkins; thus, Hawkins never received

the DHO's written statement of the reasons for his decision. *Id.* at *1, 4. In the meantime, after the DHO hearing the cellmate had told Hawkins he would provide a declaration admitting ownership of the weapon. *Id.* at *4-5. Three days after the never-delivered report was prepared, Hawkins was transferred to a different prison. *Id.* at *1.

Hawkins appealed the disciplinary sanction against him (providing the incident report and all relevant dates and information) despite having never received a copy of the report itself. The BOP kept rejecting his appeal on the ground that he failed to attach the DHO's report, even though Hawkins told the BOP he could not attach a report he was never given. *Id.* Hawkins then filed a habeas petition in federal court, to which the BOP responded by arguing he failed to exhaust his administrative remedies. *Id.* at *2. Only then did Hawkins receive a copy of the DHO's report. *Id.* The federal court granted his petition and restored his good conduct time. The court found that the failure to provide the report violated "one of the minimal due process requirements set forth in *Wolff.*" *Id.* at *5. Without the statement of evidence the DHO relied upon, Hawkins was unable to prepare his appeal to refute that evidence and the DHO's reasoning. *Id.* "Hawkins' transfer to another prison, while the DHO report sat undelivered, cut him off from the ability to obtain his former cellmate's declaration admitting ownership of the contraband," without which he was unable to mount a meaningful challenge to the disciplinary sanction. *Id.*

No similar circumstances are present here. DHO Kensy's report was delivered to Leech, albeit after substantial delay, and he pursued his administrative appeal to completion. When preparing his appeal, he had the benefit of DHO Kensy's written statement of the evidence she considered along with her decision and reasons, and he was able to present his "delay" argument on appeal.

The Court finds that Leetch received the process he was due under *Wolff* and that the disciplinary findings are supported by evidence in the record. Accordingly, the Court recommends Leetch's petition be denied.[3]

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that Paul Brooks Leetch's habeas petition [Dkt. No. 1] be DENIED and that his Motion for a Status Update [Dkt. No. 12] be DENIED AS MOOT.

Dated: July 20, 2022                          _____s/David T. Schultz_____
                                              DAVID T. SCHULTZ
                                              U.S. Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[3] Leetch did not request an evidentiary hearing, and the Court finds it unnecessary to hold one. *See Wallace v. Lockhart*, 701 F.2d 719, 730 (8th Cir. 1983) (hearing not necessary "where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record").